**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**FULL HOUSE RESORTS, INC. and SILVER**
**SLIPPER CASINO VENTURE, LLC**                                        **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO. 1:14cv223-KS-MTP**

**BOGGS & POOLE CONTRACTING GROUP,**
**INC. and RONALD LUSTIG**                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [7] of the

Defendant Boggs & Poole Contracting Group, Inc. ("Boggs") and the Motion to Strike

[17] of the Plaintiffs Full House Resorts, Inc. and Silver Slipper Casino Venture, LLC.

Having considered the submissions of the parties, the record, and the applicable law,

the Court finds that both motions should be denied.

## BACKGROUND

This action centers on certain alleged defects in the construction of the parking

garage at the Silver Slipper Casino in Bay St. Louis, Mississippi.  Full House Resorts,

Inc. ("Full House") and Silver Slipper Casino Venture, LLC ("Silver Slipper") own and

operate the Silver Slipper Casino (the "Casino").  In November of 2004, Silver Slipper

contracted with Defendant Ronald Lustig for Lustig's provision of certain architectural

services pertaining to the design and construction of the Casino and the attendant

parking garage (the "Garage").  (*See* Lustig Contract [14-1].)  In May of 2006, Silver

Slipper contracted with Boggs for the construction of the Casino and Garage.  (*See*

Boggs Contract [7-1].)  The construction of the Garage was complete as of February 7,

2007.  Full House became an owner of the Casino/Garage in September of 2012, when

it purchased 100% of the equity interests or securities of Silver Slipper.

Disputes between Silver Slipper and Boggs arose during the construction process regarding payments, expenses associated with delays, and the quality of the work performed to build the Garage.  On June 14, 2007, Silver Slipper filed suit against Boggs and F-S Prestress, LLC ("F-S"), a subcontractor suppling pre-cast sections of concrete, in the Circuit Court of Hancock County, Mississippi (the "First Action").  (*See* First Compl. [7-4].)  Silver Slipper alleged that it incurred numerous expenses and lost patron revenue due to delays in the construction process.  Silver Slipper further alleged that "the 'finished' garage is poorly constructed and meets neither the specifications nor expectations of Silver Slipper."  (First Compl. [7-4] at ¶ 13.)  Silver Slipper cited such problems with the Garage as "visual imperfections," improper and incomplete caulking and sealing, unpainted and exposed structural elements, and uneven joints.  (First Compl. [7-4] at ¶ 13.)  The First Complaint [7-4] asserted four counts in support of liability:  (i) breach of fiduciary duty against Boggs due to its failure to protect Silver Slipper's rights and interests regarding the subcontract performed by F-S; (ii) breach of contract against F-S based on its delay in performing under the subcontract, defects in the pre-cast concrete sections, and construction defects in the Garage; (iii) negligence against Boggs based on its failure to supervise F-S and ensure the work was completed within the specified schedule; and (iv) civil conspiracy against Boggs and F-S based on their respective breaches and Boggs' efforts to collect funds from Silver Slipper purportedly owed to F-S.  Silver Slipper's claimed damages included the costs to repair the defective elements of the Garage and the diminished value of the Garage due to poor construction.

-2-

Silver Slipper, Boggs, and F-S participated in an unsuccessful mediation shortly after the filing of the First Action.  These parties then submitted their dispute to arbitration.  The Court's review of the arbitration materials submitted by Boggs reveals that the primary issues before the arbitration panel (the "Panel" or "arbitrators") were Boggs' request for payments from Silver Slipper for work performed by subcontractors and Silver Slipper's claim that any payments should be offset by the expenses it incurred as a result of delays in construction.  Silver Slipper also asserted "a warranty claim against Boggs for the poor construction of the garage."  (Silver Slipper's Arbitration Statement [7-6 at ECF p. 5].)  A multi-day arbitration hearing was held in late January of 2008.  The Panel issued its Findings of Fact, Conclusions of Law and Awards ("Panel Findings") [7-9] on March 21, 2008.  The Panel found as follows with respect to Silver Slipper's warranty claim:

> Silver Slipper claims that Boggs breached its warranty to construct the parking garage in a good and workmanlike manner in accordance with the plans and specifications, free from defects of workmanship and material. Mr. Jack Granade and Mr. Randy Davis were called as witnesses to the defective condition of the facility.  Mr. Garande [sic] testified that he inspected the premises for approximately two and one half hours, that he did not make any calculation or perform any test and that his report was based solely on his observations.    Mr. Davis' function was principally to corroborate Mr. Granade's report and provide a cost estimate for the repairs found to be necessary.  With the exception of Mr. Davis's opinion that all of the corbels under the double T's should be replaced at a cost of $396,000.00 (660 @ $600), which the Panel finds is not credible, the substance of both witnesses' testimony focused on matters which are basically cosmetic in nature (i.e. painting the exterior walls, interior patching and cleanup, sidewalk repair, etc.) which do not affect the structural integrity of the facility.

> The Panel finds that Boggs warranted the delivery of a structurally sound facility as well as one free from cosmetic deficiencies not caused by ordinary wear resulting from use for the intended purpose.  Although the evidence does not even remotely indicate that the garage is structurally unsound in any way, it does clearly establish that there are nonstructural

> deficiencies which constitute and are a breach of warranty requiring remedial measures for which Boggs should be held responsible.  These include the stained and prematurely worn appearance of the three exterior walls not covered by EFS; cleaning, painting and patching the unfinished and unsightly aspects of the interior; and repairing the deteriorating sidewalks.  Therefore, Silver Slipper should be and is awarded the sum of $40,000.00 for the exterior walls, $25,000.00 for the interior, and $20,000.00 for sidewalk repair, for a total of $85,000.00.

(Panel Findings [7-9] at pp. 13-14.)  The Panel also found that Boggs should be awarded $880,548.57 from Silver Slipper for certain materials and services.  As a result, Boggs was "awarded $880,548.57 from Silver Slipper less the sum of $85,000.00 awarded to Silver Slipper against Boggs . . . ."  (Panel Findings [7-9] at p. 14.)  On May 6, 2008, the Panel issued its Final Awards [7-10] awarding Boggs "$795,548.57 from Silver Slipper, together with interest at the rate of 8% per annum from March 21, 2008." (Final Awards [7-10] at p. 2.)

On May 29, 2008, Silver Slipper served its Motion to Modify the Arbitrators' Award [7-13] in the First Action, alleging the existence of a miscalculation by the arbitrators.  Boggs filed a competing motion to confirm the award.  On June 27, 2008, the state court denied Silver Slipper's request for modification, granted Boggs' motion for confirmation, and entered final judgment in favor of Boggs.  (*See* State Court Order [7-15].)  In July of 2008, Boggs and Silver Slipper executed a Mutual Release [7-11]. The Mutual Release states in pertinent part:

> Boggs . . . and Silver Slipper . . . hereby release and discharge the other party and the other party's respective assigns of and from any and all claims, demands, liabilities, debts, obligations, actions, and causes of action of every kind, nature, and description arising out of the contract of construction for the Silver Slipper Casino and attached parking garage located in Hancock County, Mississippi, with the sole exception of new warranty claims not adjudicated in or determined by the arbitrators in the aforementioned litigation and arbitration.

-4-

(Mutual Release [7-11].)

On April 9, 2014, Full House and Silver Slipper (collectively referred to as "Plaintiffs") initiated this action against Boggs and Lustig in the Circuit Court of Hancock County, Mississippi.  (*See* Compl. [1-2].)  The Complaint presents the following averments and allegations in support of liability.  In October of 2013, Plaintiffs retained Reigstad and Associates, Inc. ("Reigstad"), an engineering firm, after noticing deficiencies in the Garage, such as water leakage and panel movement.  Reigstad inspected the premises and prepared a corrective plan to alleviate the movement and deterioration.  During the implementation of the plan, Reigstad noticed that lateral reinforced steel was missing in the pour-strip locations at each level of the Garage.  The "reinforced steel was necessary for the Garage to have proper structural support and meet applicable building codes."  (Compl. [1-2] at ¶ 13.)  Boggs and Lustig intentionally concealed the absence of the steel by pouring concrete over the defective areas.  The Garage has suffered, and will continue to suffer, acute damage and accelerated deterioration due to the missing reinforced steel.  Plaintiffs were forced to expend significant resources in order to remedy the defective condition and bring the Garage up to code.  Plaintiffs "seek to recover the cost of retrofitting the Garage with the missing lateral reinforced steel and fixing the damage to the Garage's structure as a result of Defendants' failure to design, install, properly supervise and/or properly monitor the construction of the lateral reinforcement during construction."  (Compl. [1-2] at ¶ 20.)  The Complaint asserts ten counts based on these allegations:  (i) breach of contract against Boggs; (ii) intentional misrepresentation against Boggs; (iii) negligence and

gross negligence against Boggs; (iv) breach of express warranty against Boggs; (v) breach of implied warranty against Boggs; (vi) breach of contract against Lustig; (vii) negligence and gross negligence against Lustig; (viii) intentional or negligent misrepresentation against Lustig; (ix) indemnity as to both Defendants; and (x) equity as to both Defendants.

On May 23, 2014, Boggs removed the proceeding to this Court on the basis of diversity of citizenship subject matter jurisdiction under Title 28 U.S.C. § 1332. (*See* Notice of Removal [1].)  Shortly thereafter, Boggs filed its Motion for Summary Judgment [7], urging dismissal based on the doctrines of res judicata and collateral estoppel, and arguing that the Plaintiffs' claims are time-barred.  Lustig has joined in Boggs' summary judgment motion.  (*See* Joinder [14].)  Plaintiffs' Motion to Strike [17] is aimed at Exhibit "E" to Boggs' summary judgment motion.  This Exhibit is a position paper prepared by Silver Slipper's former legal counsel and submitted to the mediator in connection with the aforementioned unsuccessful mediation between Boggs, Silver Slipper, and F-S in August of 2007.  (*See* Position Paper [7-5].)  Copies of the Position Paper were also furnished to opposing counsel at that time.

## DISCUSSION

### I.   Plaintiffs' Motion to Strike [17]

Boggs relies on the Position Paper [7-5] in support of its contention that there is an identity of facts and circumstances as between the First Action and this lawsuit for purposes of res judicata.  Boggs also cites to this document in arguing that Silver Slipper failed to exercise due diligence in discovering the construction defects alleged in this case.  Plaintiffs argue that the Position Paper should be stricken and disregarded by

the Court pursuant to Federal Rules of Civil Procedure 12(f)[1] and 56(c)(2).[2]  Boggs

opposes Plaintiffs' request and the parties present numerous arguments regarding the

admissibility *vel non* of the Position Paper under the Mississippi Court Annexed

Mediation Rules for Civil Litigation, this Court's Local Uniform Civil Rules, Federal Rule

of Evidence 408 (compromise offers and negotiations), and Federal Rule of Evidence

801 (hearsay).

      First, Federal Rule of Civil Procedure 12(f) fails to authorize the Plaintiffs'

requested relief.  Neither the Position Paper [7-5] nor the Motion for Summary

Judgment [7] to which it is attached is a "pleading" falling under the scope of this Rule.[3]

Second, as discussed below, the Court does not rely upon the Position Paper for any

ruling adverse to the Plaintiffs in relation to Boggs' summary judgment motion.

Therefore, it is unnecessary to delve into the various evidentiary arguments raised by

the parties, and the Plaintiffs' objections are essentially moot.  The Motion to Strike [17]

will be denied without prejudice to the Plaintiffs' ability to object to the admissibility of

the Position Paper in future proceedings before the Court.

**II.    Boggs' Motion for Summary Judgment [7]**

      **A.    Standard of Review**

---

[1] "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

[2] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

[3] *See, e.g.*, *Estate of Anderson v. Denny's Inc.*, 291 F.R.D. 622, 634-35 (D.N.M. 2013); *Mecklenburg Farm, Inc. v. Anheuser-Busch, Inc.*, 250 F.R.D. 414, 420 n.7 (E.D. Mo. 2008); 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1380 (3d ed.).

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, 'the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.'"  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004)).  However, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  If the movant meets his burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citation omitted).  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to

-8-

be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citing *Sec. & Exch. Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

**B.    Analysis**

Boggs argues that all of the Plaintiffs' claims are due to be dismissed pursuant to the doctrines of res judicata and collateral estoppel in light of the judgment entered in the First Action.  Boggs further contends that the claims are untimely under the applicable statute of limitations and statute of repose.  Lustig has joined in Boggs' request for summary judgment and also presented some limited arguments in support of dismissal.  Plaintiffs principally argue that Boggs' summary judgment motion is premature and should be denied pursuant to Federal Rule of Civil Procedure 56(d).  Plaintiffs also address the merits of the Defendants' bases for dismissal.

**1.    Collateral Estoppel and Res Judicata**

"In determining the preclusive effect of a prior state court judgment, federal courts must apply the law of the state from which the judgment emerged." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096-97 (5th Cir. 1995) (citing *J.M. Muniz, Inc. v. Mercantile Tex. Credit Corp.*, 833 F.2d 541, 543 (5th Cir. 1987)).  The doctrines of collateral estoppel and res judicata are closely related under Mississippi law.  *See McCorkle v. LouMiss Timber Co.*, 760 So. 2d 845, 854 (¶ 38) (Miss. Ct. App. 2000).  Collateral estoppel, also known as issue preclusion, prevents parties "from relitigating a

-9-

specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." *Id.* (quoting *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982)).  Res judicata, also referred to as claim preclusion, prevents parties from relitigating claims that were decided *or* that could have been raised in the prior action. *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (¶ 22) (Miss. 2005) (citation omitted).  The following four identities must exist for res judicata to apply:  "(1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made."  *Hotboxxx, LLC v. City of Gulfport, Miss.*, 154 So. 3d 21, 25 (¶ 10) (Miss. 2015) (quoting *Dunaway*, 422 So. 2d at 751).

Boggs argues that collateral estoppel applies since the issue of the defective construction of the Garage was determined in the 2008 arbitration leading to a final judgment in the First Action.  Similarly, Lustig posits that the Plaintiffs are collaterally estopped from relitigating the specific issue of defects or deficiencies in the Garage. Plaintiffs contend that the doctrine of collateral estoppel has no application because the warranty claim asserted and decided in the First Action concerned cosmetic defects in the Garage, whereas the present litigation centers on a structural defect, *viz.*, the absence of more than three (3) miles of reinforcing steel, i.e., rebar, as well as Boggs' fraudulent concealment of the missing rebar.

Plaintiffs' position is supported by the Court's review of the arbitration and litigation materials pertaining to the First Action.  The Court finds no prior complaint by Silver Slipper of missing steel in the Garage structure or of Boggs attempting to conceal

this condition.  Further, any determination of those issues is absent from the arbitrators'

findings and awards.  Generally, Boggs and Lustig are correct that defects or

deficiencies in the Garage were previously litigated or arbitrated in the First Action.

However, the Court's concern is whether the "specific" defects previously litigated are

"identical" to those at issue in this suit for purposes of collateral estoppel.  *Baker &*

*McKenzie, LLP v. Evans*, 123 So. 3d 387, 402 (¶¶ 49-50) (Miss. 2013) (citation omitted);

*see also Marcum v. Miss. Valley Gas Co.*, 672 So. 2d 730, 733 (Miss. 1996) (holding

that collateral estoppel is inapplicable in the absence of "identical legal issues, and the

same facts required to reach a judgment").  Boggs and Lustig have not shown "beyond

peradventure"[4] that the specific defect and concealment allegations presented in this

action were "actually litigated, determined by, and essential to the judgment in" the First

Action.  *McCorkle*, 760 So. 2d at 854 (¶ 38).  Therefore, their request for summary

judgment on the defense of collateral estoppel is denied.  *See* Fed. R. Civ. P. 8(c)(1)

(listing estoppel and res judicata as affirmative defenses); Miss. R. Civ. P. 8(c) (same).


        The preceding finding does not mandate a denial of summary judgment on the

defense of res judicata.  This doctrine bars actually litigated claims and "any claims that

should have been litigated in a previous action."  *Person v. Denbury Onshore, LLC*, 122

So. 3d 810, 814 (¶ 16) (Miss. Ct. App. 2013) (citing *Harrison*, 891 So. 2d at 232 (¶ 22)).

However, the Court's res judicata analysis will not involve Lustig.  Neither Boggs' Motion

---

    [4] *Fontenot*, 780 F.2d at 1194.

for Summary Judgment [7] nor Lustig's Joinder [14] explains how Lustig may be resolved of all liability based on the existence of a previous action to which he was a non-party.  Defendants also fail to argue that Lustig was in privity with any of the parties to the earlier suit for purposes of res judicata.  *See Rogers v. Rogers*, 94 So. 3d 1258, 1266 n.2 (Miss. Ct. App. 2012) (providing that the identity of the parties element may be satisfied where one litigant is in privity with a party to the earlier action) (citation omitted).  "[T]he absence of any one of the elements [of res judicata] is fatal to the defense . . . ."  *Harrison*, 891 So. 2d at 232 (¶ 24) (citing *Estate of Anderson v. Deposit Guar. Nat'l Bank*, 674 So. 2d 1254, 1256 (Miss. 1996)).

With respect to the identity of the subject matter element, the Mississippi Supreme Court has provided that the focus should be on "the 'substance' of the lawsuit."  *Hill v. Carroll County*, 17 So. 3d 1081, 1085 (¶ 12) (Miss. 2009) (citation omitted); *cf. Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 591 (5th Cir. 2006) (examining Mississippi law and providing that "identity of subject matter turns on a general characterization of the suit").  This lawsuit and the First Action clearly involve the same subject matter:  the construction of the Garage at the Silver Slipper Casino in Bay St. Louis, Mississippi.  Therefore, the first element of res judicata is met.

The Court also finds an identity of the cause action as between the First Action and this litigation.  This identity concerns whether two actions "involve the same claim premised upon the same body of operative fact . . . ."  *Harrison*, 891 So. 2d at 234 (¶ 31).  The Mississippi Supreme Court applies the transactional approach, as outlined by the Restatement (Second) of Judgments and referenced in *Nevada v. United States*,

463 U.S. 110, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983), when this determination touches upon multiple legal claims. *Id.* The test is as follows:

> [C]auses of actions are the same if they arise from the same "transaction"; whether they are products of the same "transaction" is to be determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Hill*, 17 So. 3d at 1086 (¶ 15) (quoting *Nevada*, 463 U.S. at 131).

The facts and allegations underlying this action and the First Action are transactionally related and bear sufficient connection to form a single, convenient trial unit. It is undisputed that the construction of the Garage was complete as of February 7, 2007. Both the First Action and this action were filed subsequent to that date and assert liability against Boggs for defects in its construction. With respect to the First Action, the Complaint alleged that "the 'finished' garage is poorly constructed and meets neither the specifications nor expectations of Silver Slipper[;]"[5] Silver Slipper's Pre-Hearing Statement of Claims, Issues and Authorities ("Arbitration Statement") asserted the existence of "a warranty claim against Boggs for the poor construction of the garage[;]"[6] and, the Panel specifically considered Silver Slipper's claim "that Boggs breached its warranty to construct the parking garage in a good and workmanlike manner in accordance with the plans and specifications, free from defects of workmanship and material." (Panel Findings [7-9 at ECF p. 14].) Here, the Complaint asserts various allegations of negligence, breach of contract, and breach of warranty

---

[5] (First Compl. [7-4] ¶ 13.)

[6] (Silver Slipper's Arbitration Statement [7-6 at ECF p. 5].)

against Boggs based on its purported failure to ensure that the Garage "would be constructed in a good and workmanlike manner free of defects." (Compl. [1] at ¶¶ 9, 22, 35-36, 44, 53.)  Although the defects at issue in the First Action (visual imperfections, improper caulking, uneven joints, etc.) and this suit (missing rebar) appear to be disparate, "evidence necessary to . . . [establish the existence of the defects in one suit] would authorize a recovery in the other." *McCorkle*, 760 So. 2d at 856 (¶ 46) (citation omitted); *see also Harrison*, 891 So. 2d at 236 (¶¶ 34-35) (finding but one transaction where two suits involved the same body of evidence; and, citing the rule stated in the Restatement (Second) of Judgments § 25 (1982) to the effect that res judicata bars a second action even if a claimant is prepared to present evidence not offered in the prior suit).  Even the Plaintiffs' claim of fraudulent concealment based on Boggs pouring concrete over the missing rebar "relate[s] in time, space, origin, or motivation" to the First Action since the First Complaint [7-4] alleged deficiencies in the concrete used in the construction of the Garage.  *Hill*, 17 So. 3d at 1086 (¶ 15).  Moreover, all of the claims against Boggs in the First Action and this litigation arise out of or relate to the same construction contract.  (*See* Boggs Contract [7-1].)

Strict identity of the parties is unnecessary to satisfy the third element of res judicata.  *See Hill*, 17 So. 3d at 1086 (¶ 17) (citing *Harrison*, 891 So. 2d at 236).  The "parties must be at least in privity with one another."  *In re Estate of Bell*, 976 So. 2d 965, 968 (¶ 7) (Miss. Ct. App. 2008) (citation omitted).  Boggs argues that Full House is barred from asserting any claims because it is in privity with Silver Slipper.[7]  Plaintiffs

---

[7] Boggs also contends, as a preliminary matter, that Full House has no standing to assert any claims against it because:  (i) the construction contract was between Silver

point out that Full House purchased Silver Slipper *after* the conclusion of the First

Action, and contend "the case law reveals that the 'privity' of the parties applies only

when it existed *during* the initial action."  (Pls.' Mem. in Supp. of Resp. in Opp. to Mot.

for SJ [20] at p. 21.)  The Court finds no such limiting proposition in the cases cited by

the Plaintiffs, which held that the identity of the parties element was met based on the

existence of privity.  *See Little v. V & G. Welding Supply, Inc.*, 704 So. 2d 1336, 1339

(¶¶ 15-19) (Miss. 1997); *Williams v. Vintage Petroleum, Inc.*, 825 So. 2d 685, 689 (¶ 17)

(Miss. Ct. App. 2002).  Furthermore, Mississippi's appellate courts have ruled that a

party's status as a successor in interest supports an application of res judicata.  *See*

*EMC Mortgage Corp. v. Carmichael*, 17 So. 3d 1087, 1091 (¶ 14), 1092 (¶ 20) (Miss.

2009) (holding that the plaintiff's claims against EMC, who purchased the plaintiff's deed

of trust from the original defendant, were barred); *Jenkins v. Terry Invs., LLC*, 947 So.

2d 972, 978 (¶ 22) (Miss. Ct. App. 2006) ("Successors in interest are in privity for

purposes of res judicata.") (citation omitted).  "[P]rivity is . . . a broad concept, which

requires us to look to the surrounding circumstances to determine whether claim

---

Slipper and Boggs; (ii) Boggs undertook no duty as to Full House; and (iii) Full House
did not become an owner of the Garage until after its completion.  This argument is
without merit under Mississippi statutory and case law.  *See* Miss. Code Ann. § 11-7-20
("In all causes of action for personal injury or property damage or economic loss brought
on account of negligence, strict liability or breach of warranty, including actions brought
under the provisions of the Uniform Commercial Code, privity shall not be a requirement
to maintain said action."); *May v. Ralph L. Dickerson Constr. Corp.*, 560 So. 2d 729,
730-31 (Miss. 1990) (reversing the trial court's grant of summary judgment in favor of a
builder in a suit alleging negligent construction and breach of implied warranties brought
by subsequent purchasers of an office building); *Keyes v. Guy Bailey Homes, Inc.*, 439
So. 2d 670, 673  (Miss. 1983) (reversing the trial court's dismissal of negligence and
breach of implied warranty claims asserted against a home builder by the second
purchaser of a home).

preclusion is justified." *Carmichael*, 17 So. 3d at 1091 (¶ 13) (citation and internal quotation marks omitted). Full House and Silver Slipper are in privity for purposes of this Court's claim preclusion analysis. Full House is essentially standing in the shoes of Silver Slipper based on its purchase of Silver Slipper's equities or securities. But for that purchase, Full House would have no claims against Boggs. The Court thus finds an identity of the parties with respect to Full House and Silver Slipper's claims at issue in this cause.

As to the fourth identity under res judicata, a defendant's quality or character is not the same in two actions if he is sued in a limited or representative capacity in one and personally in another. *See In re Estate of Bell*, 976 So. 2d at 968 (¶ 8) (citing *McCorkle*, 760 So. 2d at 856 (¶ 47)).[8] The Court finds no legally cognizable distinction between the capacity in which Boggs was sued in the First Action and the capacity in which Plaintiffs assert liability against it in this case. Therefore, all four res judicata prongs are present in this action.

Perhaps sensing a negative outcome under the preceding four elements, Plaintiffs assert that the "Court should still deny the res judicata argument because implementation of the doctrine does not further, but rather undermines, the doctrine's announced policy considerations." (Pls.' Mem. in Supp. of Resp. in Opp. to Mot. for SJ [20] at p. 20.) Plaintiffs argue that an important consideration is whether a reasonable premises owner would have investigated the structural soundness of the Garage prior to

---

[8] The Mississippi Supreme Court has not specifically explained what must be shown to meet this part of the res judicata analysis. *See Carmichael*, 17 So. 3d at 1091 (¶ 15); *Hill*, 17 So. 3d at 1087 (¶ 18).

the arbitration.  Furthermore, whether Silver Slipper knew or should have known of the subject defect by exercising reasonable diligence is alleged to be a fact issue inappropriate for summary judgment.  There are authorities favoring Plaintiffs' argument.[9]

In considering the prohibition against claim-splitting, which is sometimes indistinguishable from res judicata under Mississippi law,[10] the Mississippi Supreme Court has taken notice of the following exception:  "[A] former recovery does not bar claims of which the plaintiff was ignorant at the time of the institution of the former suit, provided the plaintiff's ignorance of the existence of the claim on which the second action was based did not result from negligence on his part."  *McVay v. Castenara*, 152 Miss. 106, 119 So. 155, 156 (Miss. 1928) (citation omitted).  *McVay* concerned two actions brought by the plaintiff relating to the defendant's failure to convey land pursuant to a written contract.  *See id.* at 155.  The plaintiff sought specific performance in the first action.  *See id.*  After the plaintiff obtained a decree in his favor in the first suit, he

---

[9] Plaintiffs also make the unsupported argument that res judicata is inapplicable because the Mutual Release [7-11] executed by Boggs and Silver Slipper in July of 2008 excepts "new warranty claims not adjudicated in or determined by the arbitrators . . . ."  Boggs' summary judgment motion does not raise the defense of release or accord and satisfaction, which would implicate the terms of the Mutual Release [7-11].  Boggs' res judicata defense depends upon the effect of the Panel Findings [7-9] and Final Awards [7-10] and the State Court Order [7-15] confirming the arbitration award.  These instruments neither specify an exception for new warranty claims nor mention the yet-to-be executed Mutual Release.  As a result, the existence of the Mutual Release fails to necessitate a denial of summary judgment.

[10] "In order for res judicata and the ban on claim-splitting to take effect, the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated."  *Harrison*, 891 So. 2d at 234 (¶ 31).  "Prevention of claim splitting is one goal of res judicata . . . ."  *Gray v. Univ. of Miss. Sch. of Med.*, 996 So. 2d 75, 81 (¶ 17) (Miss. Ct. App. 2008).

initiated the second action to recover damages purportedly caused by the defendant's delay in conveying the property. *See id.* The trial court summarily dismissed the second action and the plaintiff appealed. *See id.* The Mississippi Supreme Court reversed, finding that the plaintiff should be allowed to plead facts supporting the above-quoted exception on remand. *See id.* at 156.

Although *McVay* is dated, it has not been overruled. Further, the Mississippi Supreme Court has referenced a comparable qualification to the barring of claims in more modern cases. "[T]his principle prohibiting [re-litigation] requires that the plaintiff bring in the first forum every point which properly belongs to the subject of litigation, and which the parties, *by exercising reasonable diligence*, might have brought forward at the time." *Channel v. Loyacono*, 954 So. 2d 415, 424 (¶ 32) (Miss. 2007) (emphasis added) (quoting *Harrison*, 891 So. 2d at 234). The Fifth Circuit, whose holdings the Mississippi Supreme Court has found persuasive at times,[11] has similarly provided that res judicata bars a party from litigating "matters that, with the use of diligence, should have been litigated in the prior suit. *Stevens v. Bank of Am., N.A.*, 587 Fed. Appx. 130, 132 (5th Cir. 2014) (citation omitted); *cf. Borrego Springs Bank, N.A. v. Town of Bruce, Miss.*, No. 3:11cv85, 2012 WL 39533, at *6-7 (N.D. Miss. Jan. 9, 2012) (deferring ruling on a request for dismissal based on res judicata pending the receipt of briefing from the parties regarding whether the plaintiff could have discovered the subject claim through due diligence). The Hawaii Supreme Court has cited *McVay* as supporting the following majority rule: "[A] former recovery will not bar claims of which the plaintiff was ignorant,

---

[11] *See Harrison*, 891 So. 2d at 236-37 (¶¶ 36-37); *Little*, 704 So. 2d at 1339 (¶ 15).

even if those claims existed at the time suit was commenced in the former recovery and could have been joined, unless plaintiff's ignorance was due to his own negligence." *Bolte v. AITS, Inc.*, 60 Haw. 58, 587 P.2d 810, 813-15 (Haw. 1978) (reversing summary judgment in part due to the unresolved issue of whether the plaintiff's lack of knowledge of a second breach of contract was the result of his negligence or the fault of the defendant).

In a construction defect case highly analogous to the subject dispute, the South Dakota Supreme Court referenced the rule from *Bolte*, which is substantively identical to the exception provided in *McVay*, in holding that the trial court erred in granting summary judgment based on res judicata. *See Du-Al Mfg. Co. v. Sioux Falls Constr. Co.*, 487 N.W.2d 29 (S.D. 1992).[12] Du-Al Manufacturing Company ("Du-Al") contracted with Sioux Falls Construction Company ("SFC") for the construction of a commercial building. *See Du-Al Mfg. Co.*, 487 N.W.2d at 30. The roof of the building began to leak shortly after the completion of construction. *See id.* Du-Al subsequently sued SFC due to the leaking roof (the "roof lawsuit"). *See id.* The roof lawsuit was eventually dismissed for failure to prosecute. *See id.* Subsequent to this dismissal, Du-Al claimed that a contractor performing repair work discovered additional construction irregularities pertaining to the walls of the building, such as improper joint reinforcement and

---

[12] Mississippi's appellate courts are not averse to considering out-of-state authorities in resolving issues of claim preclusion. *See, e.g.*, *Coleman v. Miss. Farm Bureau Ins. Co.*, 708 So. 2d 6, 9-10 (¶¶ 11-14) (Miss. 1998) (citing cases from various states, including, but not limited to, Indiana, Nebraska, New Jersey, and Arkansas); *Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d 32, 44-45 (¶ 46) (Miss. Ct. App. 2012) (citing an Alabama Supreme Court opinion rejecting a res judicata argument).

improper rebar installation. *See id.* at 30-31. Du-Al next initiated a second action against SFC concerning the wall defects (the "wall defects lawsuit"). *See id.* at 31. The trial judge granted summary judgment in favor of SFC, holding that the wall defects lawsuit was barred in light of the dismissal of the prior roof lawsuit. *See id.* On appeal, the South Dakota Supreme Court provided that res judicata bars claims actually litigated and claims that could have been raised in a prior action. *See id.* (citation omitted). The court also took notice of the exception pertaining to claims that may have existed at the time of a prior action and of which a claimant, due to no fault of his own, lacked knowledge. *See id.* at 32 (citations omitted). The court then ruled as follows:

> In moving for summary judgment, SFC had the burden of showing that Du-Al knew, or could have known by the exercise of ordinary care, of the hidden or latent construction wall defects before the roof lawsuit was dismissed. Du-Al claims it did not have knowledge of these wall defects until the spring of 1989 when Swift began its repair work. By way of deposition, the engineers involved asserted that these conditions were hidden and could not be observed until the repair work was in progress and the fascia was removed to expose the condition. In resisting the motion for summary judgment, Du-Al did present specific facts which demonstrate a genuine, material issue for trial.
>
> As non-moving party, the evidence must be viewed most favorably to Du-Al, and reasonable doubts should be resolved in its favor. A question of fact exists whether Du-Al by the exercise of ordinary care knew or should have known that there were construction wall defects and thus could have sought such damages in the roof lawsuit.
>
> Before res judicata as a matter of law could apply to bar Du-Al's construction wall defects lawsuit, the factual question as to when Du-Al knew or could have known with the exercise of ordinary care of the existence of the wall defects needs to be determined. This is an issue for the finder of fact to decide.

*Id.*

In their arguments regarding fraudulent concealment and the timeliness of the Plaintiffs' claims, the parties extensively dispute whether Silver Slipper exercised reasonable diligence in discovering the missing rebar.  The Court also finds that issue pertinent to Boggs' res judicata defense in light of the foregoing authorities.  Boggs contends that the aforementioned Position Paper [7-5], submitted to the mediator in August of 2007 by Silver Slipper's former counsel, "leaves no doubt that Silver Slipper did *not* exercise due diligence to discover what it now claims is a 'new defect' that it could not have discovered before October 2013."  (Boggs' Mem. in Supp. of Mot. for SJ [8] at pp. 24-25.)  Boggs principally focuses on the following portion of the Position Paper, which references an engineering report identifying deficiencies in the Garage based solely on visual observations:

> Clearly, the attached report notes many aspects of the parking garage which contain defects that do not conform to the requirements of the Contract Documents.  More troubling, the defects observed by the naked eye by Thompson Engineering show an accelerated deterioration of the garage.  Clearly, a more comprehensive examination, including testing, might indicate more serious underlying problems.

(Position Paper [7-5 at ECF p. 13].)

Plaintiffs argue that the above-quoted section of the Position Paper concerns problems relating to the characteristics of the pre-cast concrete, not major structural defects.  Plaintiffs also contend that while further testing may have revealed more serious issues with respect to the components of the concrete, it is nonsensical to assume the testing would have shown Boggs failed to place miles of rebar in the Garage.  Plaintiffs go on to make various arguments to the effect that no reasonable owner would have performed destructive testing on the Garage to determine if it was

missing a major structural component.  Some of Plaintiffs' arguments seem sensible.
More important, the summary judgment record contains documents other than the
Position Paper [7-5] bearing upon Silver Slipper's due diligence.

In January of 2008, one of Silver Slipper's witnesses in the arbitration, Randall L.
Davis, P.E., submitted a report listing the repairs needed to make the Garage safe
following his inspection of the premises.  (*See* Davis Report [7-8].)  The Davis Report,
which lists numerous alleged defects in the Garage, says nothing about missing rebar
and even references exposed steel framing in some areas of the facility.  Viewed in
Plaintiffs' favor,[13] the Davis Report can be considered evidence of Silver Slipper
exercising due diligence and undertaking "a more comprehensive examination" that
failed to reveal the defect at issue in this lawsuit.  (Position Paper [7-5 at ECF p. 13].)
Furthermore, the Panel considered testimony from Davis and the engineer responsible
for preparing the earlier report, and found that "the evidence does not even remotely
indicate that the garage is structurally unsound in any way[;] it does clearly establish
that there are nonstructural deficiencies . . . ."  (Panel Findings [7-9] at p. 14.)  It is
possible but not necessarily probable that a reasonable premises owner would have
been spurred to conduct testing to detect the absence of reinforcing steel based on this
arbitration determination.

Plaintiffs have also submitted an affidavit from Gordan Reigstad, a professional
engineer, in opposition to summary judgment.  (*See* Reigstad Aff. [19-2].)  Reigstad was

---

[13] "[I]n ruling on a motion for summary judgment, [t]he evidence of the nonmovant is
to be believed, and all justifiable inferences are to be drawn in his favor."  *Tolan v.
Cotton*, 134 S. Ct. 1861, 1863, 188 L. Ed. 2d 895 (2014) (citation and internal quotation
marks omitted).

retained by Plaintiffs at some point in 2013 to inspect the Garage and formulate a

corrective plan.  The Court finds the following segments of Reigstad's affidavit pertinent

to the subject motion:

> On October 17, 2013, as part of the implementation of the initial corrective plan, Reigstad and Associates began minor demolition work to remove a portion of delaminated concrete at the top floor of the garage.

> During this work, we observed for the first time that the garage was missing lateral reinforcing steel at a single pour strip location on the roof.  As the work continued it became apparent that lateral reinforcing steel was omitted from every pour-strip location within the three-story garage during construction. We verbally notified Full House of these significant findings on the same day or the next day.

>     . . . .

> In total, it was observed that 19,000 linear feet of No. 5 rebar and 14,400 square feet of 6 x 6 welded wire fabric were missing from construction although this steel was drawn by the Engineer of Record.

> It was also observed that concrete was poured over all the pour-strip areas where rebar was missing during construction so that the missing rebar areas would not be visible.

>     . . . .

> Upon our discovery of the missing lateral rebar, it was apparent to me why the garage was in such a deteriorated condition.  The garage was experiencing uncontrolled movement that was never contemplated by design.

> This uncontrolled movement is what led to widespread failures in concrete connections throughout the garage.  Without this lateral steel tying the garage structure together allowing it to move as one structure, it was tearing itself apart at all joint locations.  90% of the tee to tee flange connections were failed along the center portion of the garage and 30-40% of these flanges were failed on the periphery of the garage.

(Reigstad Aff. [19-2] at ¶¶ 11-12, 14-15, 19-20.)  These averments are comparable to

the engineering testimony regarding hidden defects that the South Dakota Supreme

Court found to support a denial of summary judgment in *Du-Al Manufacturing*, 487 N.W.2d at 32.

The Court must resolve all reasonable inferences in the Plaintiffs' favor at the summary judgment stage. *See, e.g.*, *Tolan*, 134 S. Ct. at 1863; *Sierra Club, Inc.*, 627 F.3d at 138. Under this standard, the Court declines to hold as a matter of law that Silver Slipper's alleged lack of knowledge of the missing rebar at the time of the First Action was the result of its own negligence or a lack of due diligence. The existence of a fact issue regarding whether Silver Slipper knew or should have known of this defect prior to the dismissal of the First Action necessitates a denial of Boggs' request for summary judgment based on res judicata. *Cf. Borrego Springs Bank, N.A.*, 2012 WL 39533, at *6-7; *Du-Al Mfg.*, 487 N.W.2d at 32-33; *Bolte*, 587 P.2d at 815; *McVay*, 119 So. at 156. This ruling is made without prejudice to Boggs' ability to again seek dismissal pursuant to the res judicata doctrine either at trial or via a renewed motion for summary judgment after the facts have been developed through discovery.

### 2. Statute of Limitations/Statute of Repose/Fraudulent Concealment/Federal Rule of Civil Procedure 56(d)

Approximately seven (7) years passed between the completion of the Garage in February of 2007 and the filing of this lawsuit in April of 2014. Based on that passage of time, Boggs argues that Plaintiffs' claims are barred under the three-year period of limitation prescribed by section 15-1-49 of the Mississippi Code (applying to actions for which no other period of limitation is specified) and the six-year period supplied by section 15-1-41 (the statute of repose applying to actions arising from construction defects). Lustig contends that Plaintiffs' claims are untimely under section 15-1-41 and

Tennessee's four-year statute of repose (Tenn. Code Ann. § 28-3-202).[14]  Plaintiffs

argue that any applicable period of limitation was tolled by Boggs and Lustig's

fraudulent concealment.  A plaintiff alleging fraudulent concealment must show two

elements:  "(1) an affirmative act or conduct by the defendant done to prevent discovery

of a claim; and (2) due diligence by the plaintiff to discover it."  *Townes v. Rusty Ellis*

*Builder, Inc.*, 98 So. 3d 1046, 1056 (¶ 28) (Miss. 2012) (citing *Windham v. Latco of*

*Miss., Inc.*, 972 So. 2d 608, 614 n.8 (Miss. 2008)).[15]

       In the previous section of this opinion, the Court found the existence of a genuine

issue of material fact concerning Silver Slipper's due diligence in discovering the defects

at issue in this lawsuit.  This does not mandate a denial of summary judgment on the

issue of fraudulent concealment, however, because Plaintiffs must also show some

affirmative act by the Defendants designed to prevent discovery of the defects.  *See*

*Person*, 122 So. 3d at 816 (¶ 24) (citation omitted).  Plaintiffs contend that Boggs

---

[14] Lustig partially relies on Tennessee law pursuant to a choice of law provision in his contract with Silver Slipper.  "This Agreement shall be governed by the law of the principal place of business of the Architect . . . ."  (Lustig Contract [14-1] at § 9.1)  It is not necessary to undertake a choice of law analysis because there is no outcome determinative difference between the application of Mississippi's *six*-year statute of repose and Tennessee's *four*-year statute.  *See Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558-59 (5th Cir. 2011) (providing that a choice of law analysis is unnecessary where the application of two bodies of law leads to the same result) (citation omitted).  As noted above, this action was filed more than *seven* years after the completion of the Garage.

[15] In Tennessee, a claim of fraudulent concealment encompasses four similar elements:  "(1) an affirmative act by the defendant to conceal the cause of action or the failure to disclose material facts despite a duty to speak; (2) that the plaintiff 'could not have discovered the cause of action despite exercising reasonable care and diligence'; (3) the defendant must be aware of the wrong; [and] (4) the 'concealment of material information from the plaintiff.'"  *Estate of Morris v. Morris*, 329 S.W.3d 779, 784 (Tenn. Ct. App. 2009) (quoting *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn.1998)).

intentionally poured concrete over the areas of the Garage where rebar was missing in order to conceal the absence of the reinforcing steel.  The Court is unconvinced that pouring concrete, which appears to be a necessary component of the Garage construction process, can be considered an act of fraudulent concealment.  *See Reich v. Jesco, Inc.*, 526 So. 2d 550, 553 (Miss. 1988) (holding that components of the defendant's construction of the plaintiff's chicken house, which purportedly concealed certain defects in the structure, did not constitute fraudulent concealment); *accord Henry v. Cherokee Constr. & Supply Co.*, 301 S.W.3d 263, 267 (Tenn. Ct. App. 2009) ("The concealment referred to in the statute is not concealment in the original construction, but rather a concealment by defendant of plaintiff's cause of action once it arises.") (citation omitted).  Nonetheless, the Court declines to address the parties' remaining arguments regarding fraudulent concealment or to issue any ultimate ruling on this matter in light of Plaintiffs' request for relief under Federal Rule of Civil Procedure 56(d).

Rule 56(d) provides as follows:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).[16]  Plaintiffs' counsel has submitted an affidavit expressing a need

for certain discovery.  (*See* Lassiter Aff. [19-1].)  Further, Plaintiffs' summary judgment

briefing contains extensive argument to the effect that Boggs' motion is premature in

light of the limited to nonexistent discovery record.  These efforts are sufficient for the

Court to consider the merits of Plaintiffs' Rule 56(d) request.  *See, e.g.*, *Wichita Falls*

*Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992); *Int'l Shortstop,*

*Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266-67 (5th Cir. 1991).

Rule 56(d) discovery "motions are broadly favored and should be liberally

granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006) (citing *Int'l*

*Shortstop, Inc.*, 939 F.2d at 1267).  The purpose of the Rule "is to provide non-movants

with a much needed tool to keep open the doors of discovery in order to adequately

combat a summary judgment motion."  *Six Flags, Inc. v. Westchester Surplus Lines Ins.*

*Co.*, 565 F.3d 948, 963 (5th Cir. 2009) (quoting *Wichita Falls Office Assocs.*, 978 F.2d

at 919).  "Although a continuance of a motion for summary judgment for purposes of

discovery should be granted almost as a matter of course, the party seeking additional

discovery must first demonstrate how that discovery will create a genuine issue of

material fact."  *Id.* (citations and internal quotation marks omitted).  Vague assertions

that discovery will reveal unspecified facts are insufficient.  *See Am. Family Life Assur.*

*Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citation omitted).  The

---

[16] Rule 56 was amended in 2010, and the advisory committee notes to the
amendments state that "[s]ubdivision (d) carries forward *without substantial change* the
provisions of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee's note to
2010 Amendments (emphasis added).  Thus, legal authorities applying former Rule
56(f) may be referenced in this opinion.

party seeking a continuance is required to "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* The decision to grant or deny a request for a continuance to conduct discovery is committed to the sound discretion of the trial court. *See Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1107 (5th Cir. 1991) (citing *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir. Unit A 1980)).

Both Boggs and Lustig's time-bar arguments depend on the absence of evidence supporting Plaintiffs' fraudulent concealment claim. "There is no significant probative evidence of an act designed to prevent and which does prevent discovery of a claim." (Boggs' Mem. in Supp. of Mot. for SJ [8] at p. 24.) "[T]here is no evidence of any affirmative act or conduct that was done by Lustig to conceal, from the Plaintiffs, their alleged cause of action . . . ." (Lustig's Joinder in Mot. for SJ [14] at p. 7.) It is undisputed that Boggs' Motion for Summary Judgment [7] and Lustig's Joinder [14] were filed prior to the initiation of discovery, the case management conference, and the time for the parties' initial disclosures. Although it appears that the parties have now exchanged some written discovery, no depositions have been taken and the written discovery was served after the completion of briefing on Boggs' request for summary judgment. Also, the United States Magistrate Judge recently denied Boggs' request to stay all discovery pending a ruling on its request for summary judgment. (*See* Order [52].) Plaintiffs' plea to develop the evidentiary record through normal discovery procedures is not unreasonable in light of the Defendants' lack-of-evidence assertions and the limited nature of discovery proceedings to date. In several cases, the Court has

granted requests to conduct discovery prior to the resolution of summary judgments motions when the motions were filed in the early stages of litigation and/or substantial time remained to conduct discovery.[17]

　Boggs contends that Silver Slipper already engaged in extensive discovery in the First Action and that all discoverable documents relating to the construction of the Garage were produced in that cause.  Plaintiffs' position on discovery is in conflict with this contention.  "Plaintiffs have no access to Boggs' project correspondence, no access to Boggs' and others' construction documents and no testimony from non-internal personnel with first-hand knowledge of the construction work."  (Pls.' Mem. in Supp. of Resp. in Opp. to Mot. for SJ [20] at p. 11.)  The record before the Court does not enable it to resolve this conflict.  The liberal treatment commonly afforded to Rule 56(d) motions favors erring on the side of caution and permitting discovery to proceed.  *See Culwell*, 468 F.3d at 871.

Plaintiffs have also provided enough specificity regarding their purported need for discovery for the Court to determine that a summary judgment ruling on the issue of fraudulent concealment would be premature at this point in time.  Rule 56 presupposes that a litigant opposing "summary judgment has had an adequate time for discovery of evidence of contradictory facts."  *QBE Ins. Corp.*, 2009 WL 1844496, at *2 (citation

---

[17] *See Stark v. Univ. of S. Miss.*, No. 2:13cv31, 2013 WL 5563767, at *6 (S.D. Miss. Oct. 8, 2013); *Wesley Health Sys., LLC v. Forrest County Bd. of Supervisors*, No. 2:12cv59, 2013 WL 2244319, at *2 (S.D. Miss. May 21, 2013); *McCollum v. Jacobs Eng'g Group, Inc.*, No. 5:11cv177, 2012 WL 3811750, at *4 (S.D. Miss. Sept. 4, 2012); *QBE Ins. Corp. v. Legacy Condos. at Gulfport Home Owners Ass'n, Inc.*, No. 1:09cv128, 2009 WL 1844496, at *2 (S.D. Miss. June 23, 2009).

omitted).  At no point in the summary judgment briefing does Boggs or Lustig dispute Plaintiffs' contention that the Garage is missing more than three (3) miles of reinforcing steel.  Therefore, any of Boggs or Lustig's payment applications, lien waivers, and shop drawings showing the existence of the steel may very well create a fact issue regarding Plaintiffs' allegations of concealment.[18]

Ultimately, the Court finds that the not so high bar for obtaining Rule 56(d) relief has been reached in this case.  Boggs' Motion for Summary Judgment will be denied without prejudice so that discovery can proceed and Plaintiffs can marshal evidence in support of their claims and in opposition to Defendants' bases for dismissal.  Plaintiffs are cautioned, however, that this ruling may constitute a two-edged sword.  Just as discovery could reveal facts supporting Plaintiffs' fraudulent concealment allegations, it could also uncover evidence leading the Court to conclude that no reasonable jury would find that Silver Slipper exercised due diligence in discovering the subject claims.

## **CONCLUSION**

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that the Motion for Summary Judgment [7] is denied without prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion to Strike [17] is denied without prejudice.

SO ORDERED AND ADJUDGED this the 27th day of March, 2015.

---

[18] The Court expresses no ultimate determination regarding the discoverability, relevance, or admissibility of these or any other documents or information sought by Plaintiffs in discovery.  Disputes regarding the scope of discovery are to be presented to the U.S. Magistrate in their ordinary course.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE